## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **LUCKY CAPITAL MANAGEMENT, LLC** | |
| **Plaintiff,** | **CIVIL ACTION FILE** |
| **v.** | **NO. 1:14-CV-0193-MHC** |
| **MILLER & MARTIN, PLLC,** | |
| **Defendant.** | |

## ORDER

This case comes before the Court on Defendant's Motion to Dismiss

Plaintiff's First Amended Complaint [Doc. 13].[1]  For the reasons stated below,

Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1]  An amended complaint supersedes and replaces the original complaint and, unless the amendment specifically adopts the earlier pleading, the only issues before the Court are those raised in the amended complaint.  Fritz v. Standard Sec. Life Ins. Co., 676 F.2d 1356, 1358 (11th Cir. 1982); Wilson v. First Houston Inv. Corp., 566 F.2d 1235, 1237-38 (5th Cir. 1978).  Because Plaintiff's First Amended Complaint [Doc. 11] supersedes and replaces Plaintiff's original complaint [Doc. 1], Defendant's Motion to Dismiss [Doc. 8] the original complaint is **DENIED AS MOOT**.

I.    **FACTUAL BACKGROUND**

Defendant Miller & Martin PLLC ("Miller & Martin") is a law firm which

was engaged as counsel by nValeo, a Florida Limited Liability Company.

Amended Complaint [Doc. 11] ("Am. Compl.") at ¶¶ 2, 6.  After obtaining files

from nValeo's previous counsel in Florida, including the company's Amended and

Restated Operating Agreement, Miller & Martin provided certain legal services to

nValeo.  Id. ¶¶ 7, 9, 11, 14-16.

In May 2010, principals of what was to become Plaintiff Lucky Capital

Management, LLC ("Lucky") began negotiations with nValeo to purchase a

membership interest in the company.  Id. ¶ 9.  Miller & Martin represented nValeo

in these negotiations, and Lucky was represented by its own separate counsel.  Id.

Miller & Martin participated in the drafting of the agreement documents,

culminating in the execution by nValeo and Lucky of a Membership Interest

Purchase Agreement on June 7, 2010.  Under the terms of the Membership Interest

Purchase Agreement, Lucky paid nValeo $500,000 for a 2% membership interest

in the company, and both parties agreed to be bound by the terms of the Amended

and Restated Operating Agreement.  Id. ¶ 10.

In July 2010, Jeffrey L. Ritchie, the managing member and majority owner

of nValeo, contacted Lucky and requested an accelerated funding of nValeo, which

2

led to further negotiations between Miller & Martin as counsel for nValeo and counsel for Lucky. Id. ¶ 11. As a result of these negotiations, on July 26, 2010, the Amended and Restated Membership Interest Purchase Agreement was executed whereby Lucky would acquire an additional 9% membership interest in nValeo by making four additional $500,000 investments in the company over time. Lucky alleges, that pursuant to the Amended and Restated Membership Interest Purchase Agreement, it made additional investments in nValeo totaling $2,000,000 between July and December of 2010. Id. Plaintiff alleges that Mr. Ritchie almost immediately began withdrawing those funds for his personal use. Id.

On September 6, 2010, nValeo member and Chief Operations Officer Buddy Poole sent an email to Miller & Martin attorneys asking "to get the paper work to record Jeff [Ritchie] taking out loans from the company which he has needed to do from time to time to get moved to Austin, Tx." Id. ¶ 12. On September 28, 2010, Miller & Martin sent Mr. Poole a "Revolving Line of Credit Promissory Note" for Mr. Ritchie's signature. Id. ¶ 15. The drafted promissory note purported to obligate Ritchie to repay the company $2,000,000, or the unpaid balance advances made to Mr. Ritchie, whichever was less. Id., Ex. 4. Subsequently, nValeo went out of business, causing Lucky to lose its investment. Id. ¶ 16.

3

Plaintiff alleges that Miller & Martin attorneys knew that at the time of Poole's e-mail requesting the promissory note, nValeo was generating little or no sales revenue and that the primary source of nValeo's cash assets in 2010 derived from Lucky's investments in the company. Id. ¶ 13. It also alleges that Miller & Martin attorneys knew that Mr. Ritchie's withdrawals of nValeo's funds referenced by Poole were in violation of the terms of the Amended and Restated Operating Agreement because Miller & Martin allegedly knew that the "loans" taken out by Ritchie were only minimally related, if at all, to the moving of the company to Austin, Texas, and Ritchie was instead withdrawing the funds for his own personal use and pleasure. Id.

Lucky contends that Miller & Martin failed to inform nValeo of Ritchie's wrongful taking of nValeo's assets, failed to take action on behalf of nValeo to recover the funds, and failed to take any action to protect nValeo from further defalcations by Ritchie, and that Miller & Martin instead intentionally concealed Ritchie's takings from nValeo and its other members, including Lucky. Id. ¶¶ 14, 20. As a result of this alleged concealment, Lucky says it continued to invest in nValeo pursuant to the Amended and Restated Membership Interest Purchase Agreement, investing $1,000,000 after the September 6, 2010, e-mail from Poole to Miller & Martin. Id.

4

On September 24, 2012, an attorney for nValeo executed a document purporting to assign its causes of action against Miller & Martin, including any and all legal malpractice claims, to Lucky. Id. ¶ 17. The assignment was executed in Austin, Texas. Id., Ex. 5.

Defendant has moved to dismiss all of Plaintiff's Claims referenced in the First Amended Complaint as a matter of law. Defendant makes the following arguments: (A) the claims acquired by Lucky via assignment are governed by the laws of the State of Texas and fail as a matter of law; (B) Plaintiff has failed to state claims related to the breach of fiduciary duty as a matter of Georgia law; (C) Plaintiff's claims for fraudulent concealment fail as a matter of Georgia law because Defendant does not owe Plaintiff any duty and because of Plaintiff's own failure to exercise due diligence; and (D) Plaintiff's conspiracy claim fails as a matter of Georgia law because there is no implied cause of action for civil conspiracy in Georgia.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a complaint will be dismissed for failure to state a claim upon which relief can be granted if it does not

plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 548 (2007). The Supreme Court has explained

this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged. The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a

claim will survive a motion to dismiss only if the factual allegations in the pleading

are "enough to raise a right to relief above the speculative level." Twombly, 550

U.S. at 555.

At the motion to dismiss stage, the court accepts all the well-pleaded facts in

the plaintiff's complaint as true, as well as all reasonable inferences drawn from

those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo

v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not

only must the court accept the well-pleaded allegations as true, they must be

construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d

1300, 1302 (11th Cir. 2011). Documents attached to the complaint are considered

part of the complaint. FED. R. CIV. P. 10(c). But the court need not accept legal

conclusions, nor must it accept as true legal conclusions couched as factual

6

allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the Court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III.   CHOICE OF LAW

A federal court sitting in diversity looks to the choice-of-law principles of the forum in which it sits. See Fed. Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc., 468 F.3d 1322, 1325 (11th Cir. 2006); Frank Briscoe Co. v. Ga. Sprinkler Co., 713 F.2d 1500, 1503 (11th Cir. 1983).

In Georgia, choice-of-law issues are governed by the rules of *lex loci contractus* and *lex loci delicti*. See Rayle Tech, Inc. v. DeKalb Swine Breeders, 133 F.3d 1405, 1409 (11th Cir. 1998) (citing Lloyd v. Prudential Sec., Inc., 211 Ga. App. 247, 248 (1993)). Under *lex loci contractus*,

> the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply.

Lloyd, 211 Ga. App. at 248 (citation and quotation omitted).

Under *lex loci delicti*, tort cases are governed by the substantive law of the state where the tort was committed. Id.; McCarthy v. Yamaha Motor Mfg. Corp., 994 F. Supp. 2d 1329, 1332 (N.D. Ga. 2014) (quoting Carroll

7

Fulmer Logistics Corp. v. Hines, 309 Ga. App. 695 (2011)).  "[T]he place of

wrong, the *locus delicti*, is the place where the injury sustained was suffered

rather than the place where the act was committed, or . . . it is the place

where the last event necessary to make an actor liable for an alleged tort

takes place."  McCarthy, 994 F. Supp. 2d at 1332 (quoting Risdon Enters.,

Inc. v. Colemill Enters., Inc., 172 Ga. App. 902, 903 (1984)).

Additionally, Georgia's choice-of-law principles have a unique

characteristic in that the application of another jurisdiction's laws, whether via the

rule of *lex loci contractus* or *lex loci delicti*, "is limited to statutes and decisions

construing those statutes.  When no statute is involved, Georgia courts apply the

common law as developed in Georgia rather than foreign case law."  Frank Briscoe

Co., 713 F.2d at 1503 (citations omitted).

## IV.   ANALYSIS

### A.   Plaintiff's Claims Acquired Via Assignment

#### 1.   Applicability of Texas Law to Prohibit the Assignment[2]

---

[2] There is no dispute that the legal malpractice claim (Count One) was acquired via
assignment.  Am. Compl. ¶18; Pl.'s Resp. Mem. Opp'n Def.'s Mot. Dismiss ("Pl.'s
Resp.") [Doc. 17] at 21 ("the only claim designated as an assigned claim in the
First Amended Complaint is nValeo's legal malpractice claim against Miller &
Martin.").  To the extent Plaintiff's claims other than legal malpractice were
acquired via assignment, Defendant maintains they are also prohibited by

Defendant argues that Plaintiff's claims acquired via the assignment executed in Texas on September 24, 2012, are governed by Texas law and are prohibited in that state as a matter of law.  Defendant contends that a Texas statute, V.T.C.A. § 12.014, and the jurisprudence arising out of that statute govern in this case.  That statute provides:

> A judgment or part of a judgment of a court of record or an interest in a cause of action on which suit has been filed may be sold, regardless of whether the judgment or cause of action is assignable in law or equity, if the transfer is in writing.

V.T.C.A. § 12.014(a).  Defendant further argues that a Texas court interpreting this statute has ruled that there is an exception to the general rule allowing the assignment of causes of action, finding that it is contrary to public policy to permit the assignment of legal malpractice, breach of fiduciary duty, and conspiracy claims.  See Vinson & Elkins v. Moran, 946 S.W.2d 381, 394-95 (Tex. App. 1997).  Plaintiff disagrees, arguing that V.T.C.A. § 12.014(a), purporting to permit the sale of an interest "in a cause of action **on which suit has been filed** . . . if the transfer is in writing," is inapplicable to the facts of this case as there is no evidence that nValeo had filed suit against Miller & Martin at the time of the assignment in September of 2012.  V.T.C.A. § 12.014 (emphasis added).

---

controlling Texas law.  See generally Defendant's Brief in Support of Its Motion to Dismiss [Doc. 13-1] ("Def.'s Br.").

Defendant, citing <u>HSBC Bank USA, N.A. v. Watson</u>, 377 S.W.3d 766, 776

(Tex. App. 2012), argues that Texas courts have found that § 12.014 applies to all

causes of action, regardless of whether those claims arise out of a lawsuit filed at

the time of the assignment.  Defendant's Reply Brief in Support of its Motion to

Dismiss [Doc. 19] ("Def.'s Reply Br.") at 3-4.  The Court finds this case insightful

but not supportive of Defendant's argument.

HSBC Bank does involve the assignment of a legal claim that was made at a

time when no legal action was pending.  <u>HSBC Bank</u>, 377 S.W.3d at 776.  The

defendant in that case argued that §12.014 precluded the sale of causes of action in

that case because no lawsuit was pending and that was the only instance under

which a cause of action was permitted to be sold under the statute.  <u>Id.</u>  The <u>HSBC</u>

<u>Bank</u> court rejected that argument, pointing out that the predecessor statute to

§ 12.014 was "merely a rule of registration, so as to give all persons notice of the

assignment, and the statute 'was not intended thereby to prevent the acquisition of

title to a judgment, cause of action, or an interest therein, either legal or equitable,

in any other lawful manner.'"  <u>Id.</u> (quoting <u>Hunter v. B. E. Porter, Inc.</u>, 81 S.W.2d

774, 775 (Tex. App. 1935)).  The <u>HSBC Bank</u> court went on to hold that § 12.014

"has no bearing on the validity of [the] alleged assignment."  <u>Id.</u>; <u>see also</u> <u>Magill v.</u>

<u>Watson</u>, 409 S.W.3d 673, 678 (Tex. App. 2013) ( "the purpose of the statute is to

10

give parties dealing with a cause of action notice that it has been assigned and is not intended to affect the validity of any sale of a cause of action. Section 12.014 was not intended thereby to prevent the acquisition of title to a judgment, cause of action, or an interest therein, either legal or equitable, in any other lawful manner.") (internal citations omitted).

Far from governing the ability of individuals or entities to assign causes of action, Texas courts have ruled that V.T.C.A. § 12.014 is not intended to limit the common law which generally permits the sale of causes of action except when against public policy. Instead, the statute is meant to give parties to a lawsuit notice that certain claims have been assigned. Consequently, the Court concludes that V.T.C.A. §12.014 does not have any application to the facts of this case where there is no evidence that a lawsuit was filed prior to the purported assignment of causes of action.

### 2.    Validity of the Assignment under Georgia Law

Having found the Texas statute inapplicable to the facts of this case and having found no other controlling foreign statute regarding the assignability of legal malpractice claims, the governing choice-of-law rules dictate the application of Georgia law. Georgia has a statute that appears to prohibit the sale of legal malpractice claims, like the one at issue in this case. O.C.G.A. § 44-12-24 states

11

as follows: "[A] right of action is assignable if it involves, directly or indirectly, a right of property. A right of action for personal torts, legal malpractice, or for injuries arising from fraud to the assignor may not be assigned." O.C.G.A. § 44-12-24.

Plaintiff argues that this statute was amended in 2013 to add the language specifically prohibiting the sale of legal malpractice claims and that it should not be applied retroactively to assignments that occurred prior to the effective date of the statute. Pl.'s Resp. at 10. Plaintiff points out that, at the time of the assignment in this case (September 24, 2011), O.C.G.A. § 44-12-24 did not specifically preclude "legal malpractice" as an assignable claim, and instead read: "Except for those situations governed by Code Sections 11-2-210 and 11-9-406, a right of action is assignable if it involves, directly or indirectly, a right of property. A right of action for personal torts or for injuries arising from fraud to the assignor may not be assigned." Id. at 8. Plaintiff cites Villanueva v. First Am. Title Ins. Co., for the proposition that O.C.G.A. § 44-12-24, as it stood in September 2011, did not bar the assignment of all legal malpractice claims, but instead barred only those claims that sounded in personal tort and arose from an injury to the person or to the reputation or feelings. Id. (citing Villanueva v. First Am. Title Ins. Co., 292 Ga. 630, 631-32 (2013) ("Generally, a legal malpractice action is based upon the

12

breach of a duty imposed by the contract of employment between the attorney and the client, and sounds in contract when it alleges negligence or unskillfulness, and thus may qualify as an assignable chose in action under OCGA § 44-12-22.") (internal citations omitted)).  Similarly, Plaintiff argues here that the legal malpractice it acquired from nValeo is not a personal tort claim and, therefore, is not precluded by O.C.G.A. § 44-12-22. Id. at 8-9.

Villanueva is distinguishable from the case at bar in one key aspect.  As the Georgia Court of Appeals specifically noted in that case, "the alleged legal malpractice **is not based on fraud** and does not involve an injury to the person, to the reputation, or to feelings." Villanueva v. First Am. Title Ins. Co., 313 Ga. App. 164, 168 (2011) (emphasis added).  Because fraud was not an issue, Villanueva focused on the "personal tort" aspect of the legal malpractice claim; it does not appear that Villanueva considered the second half of the operative sentence from O.C.G.A. § 44-12-22 as it stood in 2011:  "A right of action for personal torts **or for injuries arising from fraud to the assignor** may not be assigned." See generally Villanueva v. First Am. Title Ins. Co., 292 Ga. 630 (Ga. 2013) (emphasis added).

In this case, however, Plaintiff's injuries arise out of an alleged fraud perpetrated on the assignor.  Plaintiff alleges that it was harmed as a result of the

actions of Defendant, knowingly, maliciously, and with the intent to injure, actively concealing Mr. Ritchie's fraud. See Am. Compl. ¶¶ 13-16, 20-23, Aff. of Thomas Scott Jr., Ex. 6. ¶ 9. Indeed, Count Four ("Fraudulent Concealment") of the Amended Complaint alleges that Defendant actively concealed the fraud that allowed Mr. Ritchie to misappropriate the funds from nValeo (the assignor). Id. ¶ 22. As such, pretermitting the issue of whether O.C.G.A. § 44-12-24 in its current form applies retroactively to disallow the assignment in this case, this Court finds that because Plaintiff's alleged injuries arise out of fraud to nValeo, Plaintiff was barred from bringing this claim under O.C.G.A. § 44-12-24 as it read in 2011. Accordingly, the legal malpractice claim was not assignable and Plaintiff, therefore, has no standing to bring a legal malpractice claim against Defendant in this case. See Cadlerock Joint Venture, L.P. v. Pittard (In re Pittard), 358 B.R. 457, 461 (Bankr. N.D. Ga. 2006) (holding that under Georgia law as it stood in 2006, a plaintiff had no standing to bring an action based on injuries arising from fraud to the assignor). Defendant's Motion to Dismiss Count One of Plaintiff's Complaint is **GRANTED**.

**B. Plaintiff's Breach of Fiduciary Duty Claims**

14

Defendant argues that Plaintiff has failed to state claims for aiding and abetting (Count Two) or procuring (Count Three) the breach of fiduciary duty as a matter of Georgia law.

### 1. Florida Law is Inapplicable to Plaintiff's Claim for Aiding and Abetting the Breach of Fiduciary Duty.

Pointing to the fact that nValeo is a Limited Liability Company incorporated under the laws of Florida, Plaintiff argues that F.S.A. § 608.4225 establishes the duties owed by corporate officers to Florida limited liability companies; specifically, that each manager and managing member of a Florida limited liability company owe a fiduciary duty to the company and all of the members of the company. Plaintiff argues that Mr. Ritchie violated his fiduciary duty to nValeo as established by F.S.A. § 608.4225 and that Defendant aided and abetted this breach of fiduciary duty. Plaintiff contends that the claim for aiding and abetting of Mr. Ritchie's breach of fiduciary duty arises out of F.S.A. § 608.4225 and, as such, the Florida statute controls this case. Pl.'s Resp. at 10-14. The Court is not persuaded by Plaintiff's argument.

As stated above, application of foreign law in this district "is limited to statutes and decisions construing those statutes. When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." Frank Briscoe Co., 713 F.2d at 1503 (internal citations omitted);

Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 725 n.6 (11th Cir. 1987) ("If a particular state does not have a controlling statute, however, the Georgia choice-of-law rule requires application of the common law as construed by the courts of Georgia.").

The mere fact there is a Florida statute that defines duties the managing member owes to a Florida limited liability company does not mean that the statute is a "controlling statute" within the meaning of the choice-of-law jurisprudence. Indeed, the parties do not appear to dispute that Mr. Ritchie, as managing member of nValeo, owed a fiduciary duty to nValeo. The question is whether Plaintiff has stated a claim against Defendant for aiding and abetting Mr. Ritchie's breach of that fiduciary duty. It is in this context that the very case Plaintiff has cited to establish the elements for this tort belies Plaintiff's position that a Florida statute is involved in this case: Amerifirst Bank v. Bomar, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991), which clearly states that it is Florida "case law," as opposed to statutory law, that "recognizes a cause of action for aiding and abetting common law torts, such as breach of fiduciary duty." Accordingly, with no Florida statute at issue in this case and having found no other controlling foreign statute regarding the claim for aiding and abetting the breach of fiduciary duty, the governing choice-of-law rules dictate the application of Georgia law.

16

### 2.   Plaintiff Has Stated a Claim for Aiding and Abetting the Breach of Fiduciary Duty Under Georgia Law.

Defendant argues that Plaintiff's claim for the aiding and abetting of Mr. Ritchie's breach of fiduciary duty fails for two reasons: (1) Defendant, the law firm representing nValeo, had no duty to disclose any information to all of the members of nValeo; and (2) Defendant took no action to persuade Mr. Ritchie to breach his fiduciary duty to nValeo.  Def.'s Br. at 15-17; Def.'s Reply Br. at 10-11.

The elements for aiding and abetting the breach of fiduciary duty in Georgia are as follows:

> (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

Insight Tech., Inc. v. FreightCheck, LLC, 280 Ga. App. 19, 25-26 (2006); O.C.G.A. § 51-12-30 ("In all cases, a person who maliciously procures an injury to be done to another, whether an actionable wrong or a breach of contract, is a joint wrongdoer and may be subject to an action either alone or jointly with the person who actually committed the injury.").

17

Defendant contends that it did not have a duty to disclose any information to nValeo and as such, Plaintiff has failed to state a claim that Defendant aided and abetted Mr. Ritchie's breach of fiduciary duty. See Def.'s Br. at 15. The Court is not persuaded by this argument. The existence of a duty flowing from a defendant to the plaintiff is not an element of this claim for the aiding and abetting of the breach of a fiduciary duty. Moreover, Plaintiff's claim is that Mr. Ritchie owed a duty to nValeo and that Defendant aided and abetted in Mr. Ritchie's breach of his fiduciary duty to nValeo, not that Defendant had any independent duty to Plaintiff.[3]

Defendant's second argument, relying on White v. Shamrock Bldg. Sys., 294 Ga. App. 340, 344 (2008), is that a claim for the aiding and abetting of the breach of fiduciary duty "requires a showing that the defendant *took action to persuade the primary wrongdoer* to breach a duty." Def.'s Reply Br. at 11(emphasis in original); Def.'s Br. Supp. Mot. to Dismiss at 17.

In White, the Georgia Court of Appeals reversed the denial of summary judgment to the defendant who was alleged to have aided and abetted the breach of the primary tortfeasor's fiduciary duties to his employer when that primary tortfeasor started a competing company and solicited business from defendant.

---

[3] To the extent Plaintiff's claim in Count Two of the Amended Complaint for the aiding and abetting the breach of fiduciary duty is based on any duty Defendant owed to the members of nValeo, Plaintiff has failed to state a claim.

18

White, 294 Ga. App. at 340-42. The evidence at summary judgment was that

defendant was not necessarily aware that the primary tortfeasor was employed by

plaintiff at the time it contracted with him; moreover, defendant's understanding

was that the primary tortfeasor was permitted to conduct business on behalf of

himself. Id.

The White court held that the plaintiff's aiding and abetting claim did not

survive summary judgment because there was no evidence to support the first two

elements: (1) there was no evidence that the defendant company acted, through

improper action or wrongful conduct, to procure an alleged breach of the primary

tortfeasor's fiduciary duty to the plaintiff company, and (2) there was no evidence

that the defendant company took any action "purposely and with malice with the

intent to injure" plaintiff's relationship with the primary tortfeasor. White, 294 Ga.

App. at 344.

In the case at bar, for the purposes of the motion to dismiss, the Court must

accept all of the well-pleaded facts in Plaintiff's Amended Complaint as true and

construes them in a light most favorable to Plaintiff. In this context, the facts are

that Defendant knew that Mr. Ritchie was engaged in the wrongful

misappropriation of funds from nValeo, funds that were primarily made up of

Plaintiff's purchase money. Am. Compl. ¶ 13. Defendant then "substantially

19

assisted and encouraged" Mr. Ritchie's fraud by drafting a document, the

"Revolving Line of Credit Note Between Jeffrey Ritchie and nValeo with

accompanying Schedule," which legitimized Mr. Ritchie's misappropriations up to

$2,000,000. Id. ¶¶ 15, 20. This Revolving Line of Credit Note provided Mr.

Ritchie with an instrument to continue to unlawfully withdraw money from nValeo

and, as such, Defendant's action "caused and procured" the further

misappropriations by Mr. Ritchie. Id. ¶ 16.

While the evidence in this case may not ultimately support Plaintiff's

allegations, they are sufficient to state a claim for aiding and abetting the breach of

fiduciary duty. Unlike the defendant in White, the allegation is that Defendant

knew that the tortfeasor's actions were unlawful and, nevertheless, facilitated those

actions. Defendant's action in drafting the Revolving Line of Credit Note caused

and procured Mr. Ritchie's breach of fiduciary duty.[4] Accordingly, Defendant's

Motion to Dismiss Count Two of Plaintiff's Amended Complaint is **DENIED**.

---

[4] Defendant appears to seize upon the following language in White: "[T]here is no
evidence that the White Defendants **took any action to persuade** Cooke [the
tortfeasor] to break a contract with Shamrock [the plaintiff]." White, 294 Ga. App.
at 345 (emphasis added). Based on this language, Defendant argues that the first
element of this tort (the improper action or wrongful conduct to procure a breach
of fiduciary duty), necessarily means that the action or conduct must "persuade"
the tortfeasor to act. The Court disagrees. Defendant is reading too much into
White's factual findings. If the tort required "persuasive" action, it would be listed
as an element. Instead, the cause of action merely requires that the defendant,

### 3. Plaintiff's Claim for Procuring a Breach of Fiduciary Duty (Count Three) is Duplicative of Plaintiff's Claim for Aiding and Abetting a Breach of Fiduciary Duty (Count Two).

Defendant correctly notes that under Georgia law a claim for aiding and abetting the breach of fiduciary duty is the same as a claim for procuring the breach of fiduciary duty. Insight, 280 Ga. App. at 24-25.

> [R]egardless of whether denominated "aiding and abetting a breach of fiduciary duty," "procuring a breach of fiduciary duty," or "tortious interference with a fiduciary relationship," Georgia law authorizes a plaintiff to recover upon proof of the following elements: (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

Id. Accordingly, the Court will treat the claims in Counts Two and Three of Plaintiff's First Amended Complaint as the same cause of action.

### C. Plaintiff's Fraudulent Concealment Claim

As with the legal malpractice and breach of fiduciary duty claims above, the Court has found no foreign statute that controls Plaintiff's fraudulent concealment claim. As such, the governing choice-of-law rules dictate the application of

---

through improper action or wrongful conduct, acts "to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff." Id. at 343.

Georgia law.  Defendant argues that Plaintiff's claim fails as a matter of law on

two grounds: (1) Plaintiff fails to show justifiable reliance because Plaintiff's First

Amended Complaint included no facts that Plaintiff exercised due diligence, and

(2) Defendant never had a duty to disclose information to Plaintiff.

A fraudulent concealment claim has five elements under Georgia law: "(1) a

false representation or omission of a material fact; (2) scienter; (3) intention to

induce the party claiming fraud to act or refrain from acting; (4) justifiable

reliance; and (5) damages." Rampura v. Main & 75 Ctr., LLC, No. 1:06-CV-515-

CAP, 2008 U.S. Dist. LEXIS 66999, at *25 (N.D. Ga. Feb. 13, 2008) (citing

Meyer v. Waite, 270 Ga. App. 255 (2004)).  "A property buyer who alleges

fraudulent concealment must prove these same five elements, including, as a factor

of justifiable reliance, that he or she could not have discovered the alleged defect in

the exercise of due diligence." Id. at *25-26.  Further, Georgia law states that "[a]n

obligation to disclose must exist before a party may be held liable for fraud based

upon the concealment of material facts." Infrasource, Inc. v. Hahn Yalena Corp.,

272 Ga. App. 703, 705 (2005).

Although not teaming with detailed factual allegations regarding the due

diligence Plaintiff exercised, if any, to discover Mr. Ritchie's alleged

misappropriation, Plaintiff does assert that "Lucky could not have discovered that

Ritchie was misappropriating its purchase payments to nValeo despite reasonable care and diligence." Am. Compl. ¶ 22. As this Motion is before the Court on Defendant's Motion to Dismiss, the Court accepts the allegations and reasonable inferences drawn from those allegations as true. In this context, taking the allegations as true, Plaintiff was unable to discover the misappropriations "despite" reasonable care. At this stage of the litigation, with regard to the justifiable reliance element of the fraudulent concealment claim, the allegation contained in Plaintiff's Amended Complaint is enough to state a claim based on that required element.

However, Defendant's argument that Plaintiff's fraudulent concealment claim fails because Defendant never had a duty to disclose any information to Plaintiff is more persuasive. In response to Defendant's argument, Plaintiff cites Rule 1.13 of the American Bar Association Model Rules of Professional Conduct[5] and argues that this rule imposes a duty on all lawyers representing corporations as clients to inform the next highest authority within the corporation when they are aware of a corporate officer engaging in unlawful activity harmful to the corporation. Pl.'s Resp. at 17; Aff. of Thomas S. Scott Jr., ("Scott Aff.") Am.

---

[5] The language of the American Bar Association Rule is substantially similar to the same-numbered rule in the Tennessee and State Bar of Georgia Rules of Professional Conduct, and Rule 4-1.13 of the Florida Bar Rules of Professional Conduct.

Compl., Ex. 6, ¶ 9. In this instance, Plaintiff's expert contends that upon learning

of Mr. Ritchie's misappropriation of money, Defendant had a duty to inform the

other members of nValeo, Plaintiff and Larry Sisco. Scott Aff., Am. Compl., Ex.

6, ¶ 9. The question then becomes whether the rules of professional conduct

establish legal duties upon the lawyers whose conduct they purport to govern.

In Georgia, although a violation of the rules embodied in the State Bar of

Georgia Rules of Professional Conduct cannot, standing alone, serve as the legal

basis for a cause of action against the lawyer who violates them, violations of the

rules of professional conduct are relevant to the common law duty of care lawyers

owe their clients, including corporations. See Allen v. Lefkoff, Duncan, Grimes &

Dermer P.C., 265 Ga. 374, 375-76 (1995). In other words, "while a Bar Rule is not

determinative of the standard of care . . ., it may be 'a circumstance that can be

considered, along with other facts and circumstances.'" Id. at 377.

That being said, the rules of professional conduct relied upon by Plaintiff are

all ethical and professional requirements, not legal requirements. The Preamble of

the American Bar Association Model Rules of Professional Conduct is insightful:

> Violation of a Rule should not itself give rise to a cause of action
> against a lawyer nor should it create any presumption in such a case
> that a legal duty has been breached. In addition, violation of a Rule
> does not necessarily warrant any other nondisciplinary remedy, such
> as disqualification of a lawyer in pending litigation. The Rules are
> designed to provide guidance to lawyers and to provide a structure for

24

> regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct.

MODEL RULES OF PROF'L CONDUCT Preamble (1983).  In this respect, this Court

finds that although Defendant's conduct with regard to the alleged violation of a

rule of professional conduct might have evidentiary value in a legal malpractice

proceeding, it does not establish a legal duty as contemplated by Plaintiff.  Because

there was no legal duty for Defendant to disclose any information to Plaintiff,

Plaintiff's claim for fraudulent concealment (Count Four) fails as a matter of law.

Accordingly, Defendant's Motion to Dismiss Count Four of Plaintiff's Amended

Complaint is **GRANTED**.

### D.    Plaintiff's Conspiracy Claim Fails as a Matter of Law

As with the claims analyzed above, the Court has found no foreign statute

that controls Plaintiff's conspiracy claim.  As such, the governing choice-of-law

rules dictate the application of Georgia law.

Plaintiff contends that Defendant entered into a conspiracy with Mr. Ritchie

and Mr. Poole "to conceal Ritchie's fraud to induce Lucky to continue to make

purchase payments to nValeo that Ritchie would misappropriate." Am. Compl. (Count Five: Civil Conspiracy) ¶ 23. Defendant correctly argues that Plaintiff's conspiracy claim fails as a matter of law because Georgia does not recognize an implied cause of action for civil conspiracy.

> A conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. Where it is sought to impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.

Cook v. Robinson, 216 Ga. 328, 328-29 (1960).

Plaintiff alleges that Defendant conspired with Mr. Ritchie and Mr. Poole to fraudulently conceal Mr. Ritchie's unlawful activity. As discussed in the previous section of this Order, however, this Court has ruled that Plaintiff failed to state a claim for fraudulent concealment. "If no cause of action is otherwise alleged, the addition of allegations concerning conspiracy will not make one." Cook v. Robinson, 216 Ga. 328, 329 (Ga. 1960). Accordingly, Defendant's Motion to Dismiss Count Five of Plaintiff's Amended Complaint is **GRANTED**.

### E.    Plaintiff's Claim For Expenses of Litigation

Defendant's argument regarding Plaintiff's claim pursuant to O.C.G.A. §13-6-11 is based on the erroneous contention that all of Plaintiff's substantive claims

have failed as a matter of law.  As discussed above, Plaintiff has stated a claim for aiding and abetting/procurement of the breach of fiduciary duty against Defendant, Counts Two and Three of the Amended Complaint, which this Court views as one cause of action.  Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for the expenses of litigation pursuant to O.C.G.A. § 13-6-11 (Count Six)[6] of Plaintiff's Amended Complaint is **DENIED**.

## V.      CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. 13] is **GRANTED IN PART** and **DENIED IN PART**.  Counts One (Legal Malpractice), Four (Fraudulent Concealment), and Five (Civil Conspiracy) of the Amended Complaint fail to state a claim as a matter of law and are hereby **DISMISSED**.

IT IS SO ORDERED this 10th day of February, 2015.

_____
MARK H. COHEN
United States District Judge

---

[6] It appears that Plaintiff has mistakenly labeled its claim for the expenses of litigation pursuant to O.C.G.A. §13-6-11 as Count "Five" instead of Count "Six."